CREEK, APPELLANT, v. BOZEMAN WATER WORKS COMPANY, RESPONDENT.

[Submitted November 2, 1894. Decided November 19, 1894.]

WATER RIGHTS—*Extent of use by appropriator.*—The right acquired by an appropriator in and to the waters of a natural stream is the right to use a certain quantity for necessary and beneficial purposes, such as supplying household needs, and the carrying on of some useful industry, and after such want is supplied, or the use is subserved, all the rest of the stream and all that returns thereto after such use is subject to appropriation and use by another for some beneficial purpose.

SAME—*Restriction on rights of prior appropriator.*—An appropriator of water may change the use of his appropriation from one purpose to another. But, after he has used the water sufficiently to answer the purpose of his appropriation, he cannot take the waters of the stream remaining which he could not use for the purpose of his appropriation, and sell to other parties, as to the inhabitants of a city for their use, and thereby, without recompense, deprive subsequent appropriators of their right to the use of the water. (*Meagher* v. *Hardenbrook*, 11 Mont. 381, cited.)

*Appeal from Ninth Judicial District, Gallatin County.*

ACTION to enjoin the diversion of water. Judgment was rendered for the defendant below by BUCK, J., sitting in place of ARMSTRONG, J. Reversed.

Statement of the case by Mr. Justice HARWOOD:

By this action plaintiff seeks to enjoin defendant from diverting all the waters of Lyman creek, described in the complaint, situate in Gallatin county, and conveying the same into a reservoir, and thence to the city of Bozeman for the use of the inhabitants thereof; whereby plaintiff alleges that she is entirely deprived of the use of one hundred inches of the waters of said creek, the right to the use and enjoyment of which, for irrigation of land and other domestic purposes, she claims by appropriation and diversion in the year 1884.

In her complaint plaintiff alleges ownership of three hundred and twenty acres of agricultural land, particularly described, through which Lyman creek flows; that plaintiff cultivates said land for agricultural purposes, and that irrigation is necessary to successfully produce agricultural crops thereon; that in 1884 plaintiff's husband appropriated and diverted one hundred inches of the waters of said creek for the irrigation of said land, and for driving a churn and boring-machine, also for household uses, and the watering of plaintiff's domestic cattle; that since said appropriation and diversion plaintiff and her husband have continually used said quantity of water for the purposes aforesaid, until deprived thereof by the Bozeman Water Works Company; that plaintiff has succeeded to all the right, title, and interest of her husband in and to said land, and the water rights and privileges acquired by appropriation, as aforesaid. That the defendant, Bozeman Water Works Company, by means of a dam constructed across said creek in the year 1889, caused all of the waters thereof to flow into a reservoir constructed by said company, and thence, by means of pipes, caused said water to flow to the city of Bozeman, and distributes the same to the inhabitants thereof for domestic use; whereby plaintiff is wholly deprived of the use of one hundred inches thereof for irrigation, domestic, and other uses, aforesaid, pursuant to her appropriation theretofore made and enjoyed, as alleged. Plaintiff further alleges that her said appropriation, diversion, and use of the waters of said creek, for irrigation and such other useful purposes, was prior to the acquirement of any right by defendant in and to the waters of said creek. Wherefore, plaintiff demands as relief that defendant be enjoined from further interfering with plaintiff's rights thus set forth in her complaint, and for costs of this action.

Defendant, by answer, denied the appropriation or use of any of the waters of said creek by plaintiff, or her predecessor, "for any purpose whatever, except in subordination to the rights of this defendant and its predecessors"; and by further denials put in issue all the material allegations of plaintiff's complaint.

And further, by way of new matter of defense, defendant

alleges: "That in connection with the business of furnishing water to the citizens of the city of Bozeman, as set forth in plaintiff's complaint," it also owns a tract of four hundred acres of agricultural land, described in its answer, adjacent to said creek, and that it is entitled to the use of two hundred and fifty inches of the waters of said creek, by appropriation and diversion by defendant's predecessors, in 1864; which quantity of water was, by means of ditches and dams, diverted and used for the irrigation of said land, and also for "domestic, culinary, and other useful purposes, and for watering stock"; that said water right, and ditches for diversion thereof, were, and are, appurtenant to the land of defendant; and the same was, and is, "necessary to the successful carrying on of the business of farming, and of supplying water to the said citizens of Bozeman, as aforesaid, and for other necessary, useful, and domestic purposes of this defendant."

As a result of the trial and consideration of the case by the court it found: "That the Bozeman Water Works Company is successor in interest to one L. B. Lyman"; that said Lyman, about the month of August, 1864, settled upon one hundred and sixty acres of land, particularly described, lying adjacent to said creek, and that about that date he diverted, by means of ditches and dams, two hundred and forty-six and one-fourth inches of the water of said creek (which volume comprised all the waters of said creek, measured according to the rule prescribed by statute), and used the same "upon the land described, for the irrigation thereof, and for other useful and beneficial purposes, by the said L. B. Lyman"; that said land settled upon by said Lyman "constitutes part of the present farm owned by the Bozeman Water Works Company"; "that said farm, together with the right to use all waters of Lyman creek, have descended by regular conveyance from said Lyman, through his successors, to the Bozeman Water Works Company, which is now the owner of said farm and water rights"; that since said year 1864 the water of Lyman creek has been used continuously upon the farm now owned by the Bozeman Water Works Company, by the appropriator, L. B. Lyman, and his successors in interest"; "that the Bozeman Water Works Company, about the year 1889, constructed a reservoir

on its ranch for the purpose of receiving the waters of Lyman creek, and laid a main pipe line and laterals for the purpose of supplying the citizens of Bozeman with water for domestic and other purposes"; that said company, "and its predecessors in interest, have, at all times since the date of the appropriation in 1864, asserted claim to all of the waters of Lyman creek, and have used the same for irrigation, and for watering stock, and for other useful and beneficial purposes"; that "the lands owned by the Bozeman Water Works Company require artificial irrigation to make the same valuable and productive"; that "all the waters of Lyman creek are required and needed by the Bozeman Water Works Company for its own beneficial uses and purposes."

The trial court further found that "plaintiff's husband, in 1884, settled upon the land now owned by the plaintiff, and in the summer of 1884 dug a ditch, tapping Lyman creek, of sufficient size and capacity to carry thirty-nine inches of water, measured according to the rule prescribed by the statute of Montana"; that "said water was used upon the land now owned by the plaintiff, Rachel E. Creek; that there are some small springs arising in Lyman creek below the pipe line, and below the two upper ditches of the Bozeman Water Works Company, tapping said creek."

Thereupon the trial court affirmed, as conclusions of law that "the Bozeman Water Works Company is the owner of and entitled to the use of all of the waters of Lyman creek which rise and flow down said creek at any point above where the lower mining ditch, owned by the said water-works company, now taps said creek"; that said company "is entitled to the waters of Lyman creek for the purpose of supplying the citizens of Bozeman with water, or for any other useful or beneficial purpose to which it may apply the same"; and "that plaintiff, Rachel E. Creek, or her predecessors in interest, appropriated, or could appropriate, in 1884, only such water as arose from springs in Lyman creek below the point where the lower mining ditch, which is now owned by the Bozeman Water Works Company, intersects or taps said creek."

*E. P. Cadwell,* for Appellant.

I.   The only appropriation made by the defendant or its predecessors in interest was made by Lyman in 1864, and, the record being bald of any conveyance of this right, it must be deemed abandoned. (*Barkley* v. *Tieleke,* 2 Mont. 59; *Tucker* v. *Jones,* 8 Mont. 224; *American Co.* v. *Bradford,* 27 Cal. 360; *Union Water Co.* v. *Crary,* 25 Cal. 509; 35 Am. Dec. 145; *Canal Co.* v. *Gordon,* 6 Wall. 561; *Reynolds* v. *Hosmer,* 51 Cal. 205; *Van Sickle* v. *Haines,* 7 Nev. 249; *Smith* v. *O'Hara,* 43 Cal. 371; 2 Blackstone's Commentaries, 217; Angell on Watercourses, §§ 168–72.)

II.   In July, 1864, the title to the land in question became perfect in the Northern Pacific Railroad Company, subject to certain conditions to be performed, and these have never been considered unperformed by the United States, so that, to all intents and purposes, the title to the land actually passed as of the date of its grant. (See *Railroad Co.* v. *Baldwin,* 103 U. S. 426; *Van Wyck* v. *Knevals,* 106 U. S. 366; *Missouri etc. R. R. Co.* v. *Railroad Co.,* 97 U. S. 497; *Railroad Co.* v. *United States,* 92 U. S. 733; *Schulenberg* v. *Harrison,* 21 Wall. 44; *Mason* v. *Hill,* 5 Barn. & Ald. 1; *Taylor* v. *Wilkinson,* 4 Mason, 400; Washburn on Easements, 216; Goddard on Easements, 251; *Van Sickle* v. *Haines,* 7 Nev. 257; *Smith* v. *Rochester,* 29 N. Y. Supp. 473; Gould on Waters, §§ 204–26; *Railroad Co.* v. *Shurmeir,* 7 Wall. 288.) A legislative grant by Congress does of itself, *propria vigore,* pass to the grantee all the estate the United States had in the subject matter of the grant, except what is expressly excepted. (*United States* v. *Percheman,* 7 Pet. 51; *United States* v. *Brooks,* 10 How. 442; *Lesseiure* v. *Price,* 12 How. 59; *Ladiger* v. *Roland,* 2 How. 581; *Godfrey* v. *Beardsley,* 2 McLean, 412.) A riparian owner is entitled to the use of water flowing through his land for irrigation. (*Blanchard* v. *Baker,* 8 Me. 253; 23 Am. Dec. 504; *Weston* v. *Alden,* 8 Mass. 136; *Gillett* v. *Johnson,* 30 Conn. 180; *Colburn* v. *Richards,* 13 Mass. 420; 7 Am. Dec. 160; *Arnold* v. *Foote,* 12 Wend. 330; *Cook* v. *Hull,* 3 Pick. 369; 15 Am. Dec. 208; *Anthony* v. *Lapham,* 5 Pick. 175; *Evans* v. *Merriweather,* 3 Scam. 492; 38 Am. Dec. 106; *Newhall* v. *Ireson,* 8 Cush. 595; 54 Am. Dec. 790; *Elliot* v. *Fitchburg R. R. Co.,* 10 Cush.

191; 57 Am. Dec. 85; *Miner* v. *Gilman*, 12 Moore P. C. C. 156; *Vanhoesen* v. *Coventry*, 10 Barb. 518.) The title to the land having vested in the Northern Pacific Railroad Company by grant in 1864 it vested with all the appurtenances and rights, among which was the right to the flow of the water in the streams through the land as it used to do. (See *Lux* v. *Haggin*, 69 Cal. 298; *Sturr* v. *Beck*, 133 U. S. 543; *Reed* v. *Spicer*, 27 Cal. 57; *Clark* v. *Willett*, 35 Cal. 534; *McDonald* v. *Bear River etc. Water Co.*, 13 Cal. 223; *Gardner* v. *Newburgh*, 2 Johns. Ch. 166; 7 Am. Dec. 526; *Pope* v. *Kinman*, 54 Cal. 3; *Creighton* v. *Evans*, 53 Cal. 55; *Union etc. Co.* v. *Ferris*, 2 Saw. 176 (which enunciates the doctrine of relation); *French* v. *Fyan*, 93 U. S. 170; *Railroad Co.* v. *Smith*, 9 Wall. 95; *Union etc. Co.* v. *Dangbery*, 2 Saw. 450; *Wilcox* v. *Jackson*, 13 Pet. 498; *Mason* v. *Austin*, 46 Cal. 385.)

*Smith & Word*, for Respondent.

I. Where one appropriates water for the purposes of irrigation or any other use that necessarily consumes the volume and body of the water, diminishes it in quantity, and deteriorates it in quality, such appropriator or owner of the use of water may change the place of its diversion or use, or the character of his use, even though subsequent appropriators may be affected or injured, unless the prior appropriator had, after his first use, returned the water to the channel of the stream with no intention to recapture or use it again. (Comp. Laws, 5 div., § 1252; *Woolman* v. *Garringer*, 1 Mont. 542; *Davis* v. *Gale*, 32 Cal. 20; 91 Am. Dec. 554; *Meagher* v. *Hardenbrook*, 11 Mont. 385; *Kidd* v. *Laird*, 15 Cal. 163; 76 Am. Dec. 472; *Strickler* v. *City of Colorado Springs*, 16 Col. 61; 25 Am. St. Rep. 245; *Fuller* v. *Swan River etc. Min. Co.*, 12 Col. 12.) The uses to which the water was first applied in 1864, or even for several years later, would not measure the right acquired by the appropriator, if he actually diverted the water from the stream by means of ditches of sufficient capacity to carry the same, and intended it for a beneficial purpose. (*Barnes* v. *Sabron*, 10 Nev. 244; *Thorp* v. *Woolman*, 1 Mont. 168; *Nevada County etc. Co.* v. *Kidd*, 37 Cal. 315; *Irwin* v. *Strait*, 4 West Coast Rep. 582.) Even

admitting there was no law or custom in force in Montana at the date of appropriation by Lyman, still the act of Congress of July 26, 1866 (14 U. S. Stats. at Large, 253), recognized and confirmed the validity of all water rights theretofore made on the public lands of the United States. But prior to this act of Congress the common-law doctrine of riparian rights, except to a limited degree, was held to be inapplicable to the condition, wants, and necessities of the western states, and the doctrine of prior appropriation prevailed everywhere in the west, and was fully recognized as the law and custom of all these states, both by the state and federal courts, and these decisions of other states and territories, in 1864, of which Montana had been a part, were known and recognized here. (*Jones* v. *Adams*, 19 Nev. 84; 3 Am. St. Rep. 788; *Union etc. Co.* v. *Ferris*, 2 Saw. 199; *Reno Smelting etc. Works* v. *Stevenson*, 20 Nev. 269; 19 Am. St. Rep. 364; *Atchison* v. *Peterson*, 20 Wall. 507; *Basey* v. *Gallagher*, 20 Wall. 670.) And it is admitted that on January 12, 1865, a law was passed by the Montana legislature which permitted the appropriation of the waters of running streams, and as Lyman and his successors continued to use and apply the appropriation, made in 1864, for useful and beneficial purposes, in 1865, and continuously since, after the passage of this act by the Montana legislature their use constituted a valid appropriation that was confirmed by the act of Congress of July 26, 1866. The appropriation made by Lyman has descended by regular deeds and conveyances to the respondent, as found by the court.

II. The claim of the appellant to land within the land grant of the Northern Pacific Railroad Company, by virtue of her purchase from the company, can give her no better right than the company possessed. And the right of the company to any particular tract is to be determined by the date of filing a plat of the definite route of the road with the commissioner of the general land-office. Until such time its right to any particular tract was uncertain, and did not attach, although the grant was in fact a grant *in præsenti.* (*Jatunn* v. *Smith*, 95 Cal. 154; *Desert Salt Co.* v. *Tarpey*, 142 U. S. 241; *Van Wyck* v. *Knevals*, 106 U. S. 367; *Barney* v. *Winona etc. R. R. Co.*, 117 U. S. 228; *Kansas Pac. R. R. Co.* v. *Dun-*

*meyer*, 113 U. S. 629; *Leavenworth etc. R. R. Co.* v. *United States*, 92 U. S. 733; *St. Paul etc. R. R. Co.* v. *Northern Pac. R. R. Co.*, 139 U. S. 1; *Railroad Co.* v. *Baldwin*, 103 U. S. 426; *Schulenberg* v. *Harriman*, 21 Wall. 44; *United States* v. *Southern Pac. R. R. Co.*, 146 U. S. 593.) All rights of the respondent to the use of this water having accrued before the right of the railroad company attached by virtue of its grant, the appellant cannot claim to be a riparian proprietor before the respondent's right by appropriation arose. The rights of settlers on public lands are subject to the water rights already appropriated. (*Lytle Creek Water Co.* v. *Perdew*, 1 West Coast Rep. 866; *Lux* v. *Haggin*, 69 Cal. 255.) And patents issued to parties for land since 1870 (16 U. S. Stats. at Large, § 17) must, under the provisions of that act, be held subject to such vested rights as were previously acquired by other parties under the ninth section of the act of 1866. (*Barnes* v. *Sabron*, 10 Nev. 217.) The title of the appellant, although not by patent, is no better, since her grantor's title did not attach to this land until July 6, 1882, or more than twelve years after the act of 1870, and hence her title is subject to the limitations prescribed in that act.

HARWOOD, J.—The main question of law involved in this case may be stated by the following propositions: Where several individuals, in succession, have, pursuant to the provisions of the laws of this state regarding water rights, appropriated and acquired right to use the waters of a creek for certain beneficial purposes, such as the irrigation of their respective farms, may the first appropriator, or his successor, after subsequent appropriations have been acquired, not only use the waters of the creek by him appropriated for his individual uses, but, in addition, after his individual use has been sufficed, convey the waters of such creek entirely away from its usual channel, and sell the same to the inhabitants of a city for their use, and thereby, without recompense, deprive the subsequent appropriators of the use of the waters of said creek, which they had enjoyed alone with the first appropriator's former use of it? The answer to this question must be in the negative. The right acquired by an appropriator in and to

the waters of a natural stream is not ownership of a running volume of the dimensions claimed, like the individual ownership of a chattel, so that it may be transferred corporally and carried away, but the right acquired by the appropriator is the right *to use* a certain quantity for necessary and beneficial purposes, such as supplying household needs, and the carrying on of some useful industry; and, when such want is supplied, or the use is subserved, all the rest of the creek, and all that returns thereto after such use, is subject to appropriation and use by another for some beneficial purpose. The same volume of water may, therefore, in its flow down the creek, supply many persons, even though the first appropriator claims the whole volume, and can, at times, or even constantly, use the same for some industrial purpose, because such use does not usually swallow it, but leaves it available to others. But by such an appropriation the first appropriator does not acquire a preemption of the whole creek, so that he, or his successor, may, after enjoying the use of it for some beneficial purpose, convey the creek away and cut off subsequent appropriators. Therefore a subsequent right to use the same water, or so much of it as returns to the creek, and to use the waters of the creek when the first is not using the same, may be acquired. And therefore the trial court proceeded upon an erroneous view or theory of the law governing water rights, and the relation of various appropriations to one another, in holding that plaintiff, or her predecessor, could not acquire by appropriation any right to the use of the waters of said creek arising and flowing therein above defendant's ditches. It is well understood that a creek in these mountainous regions, flowing a volume of two hundred and fifty inches, would suffice to irrigate more than one small farm; not only so, that there are considerable periods when a farmer does not irrigate his crops, while the water in an adjacent stream, which he is entitled to use, so far as his needs demand, flows on forever, and is subject to the use of others.

It appears that Lyman settled upon the creek in question in 1864, acquired one hundred and sixty acres of land, and appropriated the waters of said creek to irrigate the same, to which right this defendant company has succeeded. Follow-

ing the settlement and appropriation by Lyman, for the purpose mentioned, plaintiff's husband acquired agricultural land, situate upon the banks of said creek, and likewise appropriated the water of said creek to irrigate his land.   When the second appropriator came and viewed the situation, even conceding that Lyman had appropriated all, and could use all, of the waters of said creek at times for the irrigation of his land, it was very plain, considering the laws of nature and the purpose for which Lyman was using said water, that there was sufficient opportunity for plaintiff's husband to irrigate a farm, notwithstanding Lyman's appropriation.   Under these circumstances plaintiff's husband acquired a right to the use of said waters subsequent and subject to that of Lyman.   But it came to pass, in the course of time, that Lyman sold his land, with his water right appurtenant thereto, to defendant company, and the company appears to have acquired some lands in addition to that owned by Lyman.   But, in addition to the irrigation of its land, as successor to the rights of Lyman, the company, about 1889, engaged in the business of supplying the inhabitants of the city of Bozeman with water for their use, and to that end conducted the water of said creek into a reservoir, and conveyed it thence to said city.   And defendant company claims the right to so use the water, based upon Lyman's appropriation, which was prior to that of plaintiff's husband.   On the same theory the first appropriator of the waters of a creek might use the same sufficiently for his own purposes, and then, instead of letting it go to the next subsequent appropriator, and so on in succession, he might sell the water to some individual who could not acquire any right to it by appropriation, and such purchaser would thereby acquire the water over the subsequent appropriator.   For instance, if a creek supplied sufficient to irrigate five farms, and the first, or first and second, appropriators had claimed enough to comprise the whole volume of the creek, instead of allowing the water, after their use, to pass on to the three subsequent appropriators, they might sell it out entirely to a sixth party desiring to use such water; and whereas the farms of the third, fourth, and fifth appropriators had hitherto been sufficiently irrigated, after the first and second had used sufficient of the

waters of the creek for their purposes, it turns out that the first and second could sell and convey the water, depriving the third, fourth, and fifth entirely thereof. Under such a theory the early appropriators, whose claims are sufficient to include the volume of a flowing stream, instead of holding a *usufructuary* relation to it, would hold corporeal ownership of it, with power to control and dispose of it very much like a chattel.

It has been held that an appropriator of water may change the use of his appropriation from one purpose to another. (*Meagher* v. *Hardenbrook,* 11 Mont. 381, and cases cited.) But it has never been held in this state (nor are we cited to like holding elsewhere) that after an appropriator has used the water sufficiently to answer the purpose of his appropriation, he might take the waters of the stream remaining, which he could not use for the purpose of his appropriation, and sell it to other parties, thereby depriving subsequent appropriators of their right to use the same, but that is what defendant has accomplished in this case. Defendant has not changed the use for which the water in question was first appropriated by Lyman from that of irrigating agricultural lands to mining or operating a mill, or the like, leaving the water, after such use, to go on to subsequent appropriators in succession; but defendant company has assumed to take the water of said creek, over and above that necessary to irrigate its lands, and sell the same to others who had no claim by appropriation thereto, to wit, to the inhabitants of the city of Bozeman, thereby depriving the next subsequent appropriator entirely of the use of said water. This defendant cannot lawfully do, without acquiring plaintiff's right therein.

There is a finding of the trial court that plaintiff's husband, in the summer of 1884, "dug a ditch tapping Lyman creek, of sufficient size and capacity to carry thirty-nine inches of water, measured according to the rule prescribed by statute," which finding is excepted to as not supported by the evidence. This finding is ambiguous. It may be entirely true and warranted by the evidence under one construction, and erroneous and unwarranted under another, either of which interpretations may be insisted on with about equal emphasis. Plain-

tiff alleges appropriation of one hundred inches of the water of said creek in 1884, and also alleges in her complaint the construction of a ditch, of certain dimensions stated, whereby she diverted said water for the various purposes alleged; and according to these allegations said ditch is capable of carrying more than one hundred inches of water. Those allegations are entirely undenied by defendant's answer. This state of facts, thus admitted in the pleadings, may or may not be contradicted by the finding mentioned. That depends on the interpretation given to it. A ditch of the capacity admitted by the pleadings is, of course, "of sufficient size and capacity to carry thirty-nine inches of water" as found. But if the finding is to be understood as affirming that said ditch is *only* of sufficient capacity to carry thirty-nine inches of water, the effect of it would be very material, because her appropriation would be limited to the capacity of her ditch or ditches for diversion of said water. Notwithstanding the admissions of the pleadings as to the capacity of plaintiff's ditch, there was evidence introduced on that subject. Several witnesses were called by plaintiff, describing the ditches whereby plaintiff and her husband, as her predecessor in interest, had diverted the waters of said creek, and their testimony supports the allegations of the complaint on that point, although such evidence was unnecessary. But one witness called by plaintiff stated that on a certain occasion he could only flow thirty-nine inches of water through plaintiff's ditch. He stated that on that occasion he was employed by defendant company, or its agent, to make such test of the capacity of plaintiff's ditch, and turned water therein for that purpose. He does not state the dimensions of plaintiff's ditch, nor did he contradict the allegations of her complaint or her other witnesses on that point, except in so far as his testimony, by implication, contradicts theirs. Moreover, his testimony might be true, and the allegations of the complaint, which were undenied, and the testimony of other witnesses on that point, might also be true; for the ditch, although generally of a capacity sufficient to carry one hundred inches of water, as shown by the dimensions alleged in the complaint, may, from some local defect or lack of repair on the occasion when said witness turned water therein, have only carried

thirty-nine inches.   So this witness's testimony might be true and yet furnish no real or just ground for finding that plaintiff's means of diversion was only of the capacity of thirty-nine inches, if that is to be the construction put upon such finding. At all events, as the record stands, considering the admission of the pleading on that point, we regard the finding unwarranted if construed to mean that plaintiff's ditch was only of the capacity sufficient to conduct thirty-nine inches.

For the foregoing reasons the judgment should be reversed, and the cause remanded for new trial, and an order of this court will be entered accordingly.

*Reversed.*

PEMBERTON, C. J., and DE WITT, J., concur.

