EGLAR v. BAKER et al.

(Fourth Division.  Fairbanks.  July 4, 1910.)

No. 1550.

WATERS AND WATER COURSES (§§ 19, 30*)—PRIORITIES—CHANGE OF POINT OF DIVERSION.

A prior appropriator of the waters of a public stream on the public domain to a beneficial use has the prior right to the continued use of the waters, and may change the point of diversion or the place of use, so long as such change does not prejudice the rights of subsequent locators and users; but he will not be permitted to so change the point of diversion or the place of use as to interfere with rights acquired in the use of such waters by lower claimants subsequent in point of time to his original appropriation, but prior in point of time to his change of diversion or use of the waters.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 11, 12, 20; Dec. Dig. §§ 19, 30.*]

On application of plaintiff for restraining order pendente lite.

McGowan & Clark, of Fairbanks, for plaintiff.

John L. McGinn and Cecil H. Clegg, both of Fairbanks, for defendants.

LYONS, District Judge.  In this motion for a restraining order, the proof is not entirely satisfactory, and it is apparent that the counsel for both plaintiff and defendants were relying on the adjudication of a question of law to dispose of the controversy.  The plaintiff insists that the proof is sufficient to show that, while the defendants had appropriated the waters in controversy prior to his appropriation, they had changed the place of its use after he had made his appropriation.  That is, that the defendants appropriated the water at a certain point and subjected the same to beneficial uses, and thereafter permitted the water to flow back into Sullivan creek, where the plaintiff in turn diverted and appropriated the waters, after they had returned from the place where the defendants were using them,

to the natural channel, and that the defendants, by reason of their changing the place of usage, had diverted the waters in such a manner as to entirely cut off his water supply.

The defendants contend that they have a right to change the place of usage of waters properly appropriated, and may convey such waters to any place they desire, so long as they subject the same to beneficial uses, and that no subsequent appropriator has any legal right to question the place where they shall use such water. The defendants rely chiefly on Wimer v. Simmons, reported in 27 Or. 1, 39 Pac. at page 6, 50 Am. St. Rep. 685, and it is true the opinion in that case seems to sustain defendants' contention, although the facts in the case are not parallel with the facts in this case, and, on page 11 of 39 Pac., in the opinion, Judge Wolverton, speaking for the court, says:

"Much stress was laid upon the case of Schulz v. Sweeny, 19 Nev. 359, 11 Pac. 253 [3 Am. St. Rep. 888], and cases of like nature, as authority in point showing an abandonment. In the case referred to, the very act of discharging the water again into a natural channel, by reason of the nature of the use and the absence of an intention to reclaim, constituted an abandonment. Such is not the case here."

The language just quoted implies that, when the appropriator of waters turns the same back into the natural channel after he has subjected the same to whatever beneficial uses he desires, the water again becomes public property, and subject to reappropriation. However, there is language in Wimer v. Simmons, supra, which seems to sustain defendants' contention, but the doctrine, carried to its ultimate conclusion, would result in a most unreasonable and harsh rule, for it would enable one man owning a placer mining claim near the head waters of any stream, so long as he had appropriated the waters for beneficial uses, before any of the other owners lower down the stream, to convey the waters entirely around the property of the other owners, and subject it to some beneficial use many miles further down the stream, notwithstanding the fact that other mineowners might have been using the water for years after he had turned the same back into the stream from his first place of appropriation to beneficial uses. Such a rule is

unjust and unreasonable, and tends to retard the development of any country where water is appropriated either for mining or irrigation purposes. It is true the appropriator may change the place of use, so long as he does not interfere with the accrued rights of subsequent appropriators.

The apparent doctrine announced in Wimer v. Simmons, supra, has been repudiated by the same court in the later case of Williams v. Altnow, 51 Or. 275, 95 Pac. 200, where the court says, among other things:

"A prior appropriator of waters for a beneficial use from a stream or other source of supply may change the point of diversion or the place of use so long as it does not prejudice the rights of subsequent claimants. After the needs of a prior appropriator of water for a beneficial use, as measured by his original appropriation, have been supplied, or when the water is not actually required or used by him, it is at the disposal of other and subsequent appropriators according to their respective rights, and the prior appropriator must permit it to flow down to them as it is wont to flow."

See, also, Hough v. Porter, 51 Or. 318, 98 Pac. 1083, where the Supreme Court of the state of Oregon, in an exhaustive and carefully considered opinion, uses the following language, on page 1109 of the volume last quoted:

"The parties hereto are each limited in the appropriation of water adjudged to them, to the specific tracts upon which it has heretofore been applied, excepting in such instances as where it may be practicable to change the place of use without substantial injury to others whose rights are here determined; that is to say, if by changing the place of use, when the water is needed by others, the quantity returning to the stream, after changing the place of use as compared to its previous application, is substantially diminished, or if, by reason of such change, the 'run off' reverts to the stream or channel below the point diverted by another, thereby reducing the supply at such point, it must necessarily operate to the injury of the rights of such other party, and the change must not be permitted. Wiel, Water Rights (2d Ed.) § 47; [Williams v. Altnow] 51 Or. 275, 97 Pac. 539."

Whatever may have been the rule in the state of Oregon with reference to the right of the first appropriator to use the water wherever he desired, regardless of the rights of subsequent appropriators, the law is now settled in that jurisdiction that he cannot change the place of use so as to interfere with the vested rights of subsequent appropriators; that is, those

who are subsequent in point of time to his original appropriation, but prior in point of time to his change of place of use of the waters.

Nearly all of the opinions cited by defendants use this language:

"The prior appropriator has a right to change the place of use so long as it does not interfere with the rights of subsequent appropriators."

If the prior appropriator owns the water, if he has the right to take it to any place he desires, so long as he devotes it to some beneficial use, why should the courts use such restrictive language?

If the defendants in this case used the waters on Homestake Bar and afterwards permitted it to flow into Quartz creek, either by actual act or by reason of the configuration of the ground at that point, and it was thereafter permitted to flow through its natural channel into Sullivan creek, and thence through or by the property of the subsequent locator, it became public property when it reached its accustomed channel, and any person appropriating below, with these facts before him, secured a right to the use of the waters which cannot be denied him by defendants changing the place of use from Homestake Bar to some other point, which change would divert the water in such a manner as to cause it to reach its natural channel below the subsequent appropriator's intake.

Defendants also cited cases from California and Montana, but a careful review of these cases discloses the fact that they do not sustain the doctrine contended for by counsel, although in some of them there is language used which, standing alone, might justify counsel's contention. The Supreme Court of Montana, however, has clearly annunciated the contrary doctrine in Gassert v. Noyes et al., 18 Mont. 216, on page 223, 44 Pac. 959, on page 962. The court, in the closing paragraph of that opinion, uses the following language:

"The facts of the case at bar, we think, bring it squarely within the rule announced in the authorities quoted and cited above. It will not be disputed, we think, that a prior appropriator of water cannot so change the use of the water as to deprive the subsequent

4 A.R.—10

appropriator of his rights. If the prior appropriator cannot encroach upon the rights of the subsequent appropriator by changing the use, we think, for the same reason, he cannot do so by changing the place of the use. This view, we think, is in accordance with the authorities, as well as reason and justice. We think the instruction complained of is in direct conflict with the authorities and views herein expressed. We are therefore clearly of the opinion that the instruction is erroneous. The instruction is certainly in conflict with the spirit, reason, and holding of Creek v. Water Works Co. [15 Mont. 121, 38 Pac. 459], supra. To hold that the prior appropriator of water has the unrestricted right to so change the use, or the place of use, of water appropriated by him as to wholly deprive subsequent appropriators of their rights is to subject the important question of water rights and irrigation in this state to the baleful influence of monopoly, which appears to us dangerous to private rights and inimical to public policy."

While the testimony in this case is meager, yet I am inclined to believe that, if the water was used by defendants at Homestake Bar, it flowed back to Sullivan creek, its natural channel. However, there is serious controversy on this point in the evidence. The court is not disposed to determine finally that question on a preliminary hearing of this character. However, from the proof submitted, the court inclines to the belief that less harm will be done the defendants by continuing the restraining order, if they are right, than would be done the plaintiff by dissolving the restraining order, if he is right. If counsel were ready at this time to submit the evidence in the case, it might be tried on its merits, but since, as I understand from counsel, they are not prepared to try the merits of the controversy at this time, it seems desirable to maintain the status quo until the arrival of Judge Overfield, who will be able to hear the case on its merits at an early date.

After the court had indicated its views with reference to the law governing the disposition of the motion, the parties agreed by their counsel that an order should be entered pendente lite permitting the defendants to use the water one-half of the time, and the plaintiff to use the water one-half of the time.

The court, therefore, directs that a temporary order of such a character be entered.