BARR, APPELLANT, v. RUPP, EXECUTRIX, RESPONDENT.

(No. 7,442.)

(Submitted October 31, 1935.   Decided November 18, 1935.)

[51 Pac. (2d) 1050.]

Cause submitted on briefs of Counsel.

*Mr. S. P. Wilson* and *Mr. J. J. McDonald,* for Appellant.

*Mr. Ralph E. Williams,* for Respondent.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to have adjudicated, as between the parties, the waters of Gilstrap Creek, a tributary of Ross's Fork of Rock Creek in Granite county. The court entered judgment awarding the defendant an appropriation of 400 inches as of the year 1895 from the waters of this creek, and denying plaintiff all relief. Plaintiff has appealed from this judgment.

The court found that Gilstrap Creek flowed across section 23 and a portion of section 24 of township 5 north, range 16 west, and that section 23 was an odd-numbered section within the limits of the primary land grant made to the Northern Pacific Railroad Company by Act of Congress, July 2, 1864. (13 Statutes at Large, 365.) The court also found the various

dates with reference to the acceptance of the grant, the filing of a map of the general route of the railroad, the notice of withdrawal of the land embraced within the grant, the report of the commissioners certifying the completion of the road, and the acceptance of the report by the President as of October 4, 1883. The court further found that the lands in section 23 were surveyed by the United States in 1903, and that all of section 23 was patented to the Northern Pacific on December 6, 1905, except the north half of the northeast quarter, and the southeast quarter of the northwest quarter of section 23, which was relinquished by the Northern Pacific Railway Company to the United States on December 6, 1905.

The Northern Pacific Railway Company on February 27, 1908, conveyed to a predecessor in interest of the defendant the southwest quarter of the northeast quarter, and the southeast quarter of the northwest quarter of section 23, and on October 15, 1908, the United States issued to the same predecessor in interest of the defendant a patent to the unconveyed residue of the northeast quarter of section 23. The court further found that in the year 1887 or 1888 one William Clawson, a predecessor in interest of plaintiff, went upon the lands then unsurveyed, and now embraced within the northeast quarter of section 23, and attempted to appropriate, and did divert, water from Gilstrap Creek for use upon lands in section 24, then claimed by Clawson as a settler, and also conveyed water upon and across a portion of the northeast quarter of section 23 and upon a portion of the northwest quarter of section 24.

The evidence discloses that from at least the year 1888 until subsequent to the year 1929, plaintiff and her predecessors in interest had irrigated approximately 22 acres of land in section 24 by means of four ditches diverting water from Gilstrap Creek, and that although prior to the survey her predecessors in interest had irrigated a considerably larger area of lands in what was afterwards determined to be section 23, after the survey they confined their irrigation to the 22 acres, approximately. By its conclusions of law the court determined that the lands within section 23 ceased to be public lands on July 2, 1882, the

date when the railroad company filed its map of definite location, and that the waters of Gilstrap Creek thereon were not subject to appropriation after that date.

By numerous specifications of error plaintiff has challenged the findings of the court, the conclusions of law and the decree, all of which decide that plaintiff is without right to any of the waters of Gilstrap Creek.

The theory on which the trial court decided the case was that, since lands within section 23 were within the Northern Pacific land grant, any attempt to make an appropriation of water by entering upon what was afterwards determined to be lands within that section was a trespass, and was therefore invalid within the rule of this court announced in the cases of *Prentice* v. *McKay*, 38 Mont. 114, 98 Pac. 1081, and *Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71. Plaintiff contends, however, that until these lands were surveyed they were a part of the public domain, and that after the grant, but before the survey, settlers on them might initiate an appropriation for water under the congressional consent to entry upon the public domain and construction of ditches for the appropriation of water. (43 U. S. C. A., sec. 661.)

In the case of *Wills* v. *Morris*, No. 7,396, ante, p. 514, 50 Pac. (2d) 862, decided October 17, 1935, we gave consideration to this identical question, and there said: "The above contention presents the question whether the United States before the survey still exercised such proprietary interest over these Northern Pacific lands as would enable McDonald to act under the congressional consent and initiate an appropriation without thereby becoming a trespasser. In the case of *United States* v. *Montana Lumber & Mfg. Co.*, supra [196 U. S. 573, 25 Sup. Ct. 367, 49 L. Ed. 604], the defendant there had entered on certain lands which were afterwards determined to be within the Northern Pacific land grant, and removed timber therefrom. The suit was brought in an effort to recover the value of the timber cut and removed by the defendant. The Supreme Court sustained the right of the government to maintain the suit, and in the course of its opinion said: 'Until the identification of the

even and odd numbered sections the United States retained a special property, at least, in the timber growing in the township; and this was sufficient to enable it to recover the value of the timber cut and removed by the defendants.' This court, in the case of *Northern Pacific Ry. Co.* v. *Smith*, 62 Mont. 108, 203 Pac. 503, speaking of the status of lands of the Northern Pacific land grant prior to their survey, said: 'Until this [survey of the lands] has been done, the federal government retains a proprietary interest in them, to the extent that it will exercise the same dominion over them as over its ungranted lands.' Clearly, under the foregoing authorities the lands of the Northern Pacific land grant, prior to the survey, were a part of the public domain; and one who went on them for the purpose of making an appropriation of water and of constructing ditches thereon was not a trespasser, but was acting within the right expressly granted to settlers by Act of Congress. Our conclusion is supported by a decision of the supreme court of Idaho under like facts, in the case of *Childs* v. *Sharai*, 8 Idaho, 378, 69 Pac. 111.''

The trial court erred in finding that the plaintiff's predecessors in interest made no appropriation, and in concluding that the attempted appropriation was initiated in trespass, and in denying her all relief.

The evidence discloses that the original appropriation was at least 100 inches of water. The court found that the predecessor in interest of plaintiff first used the waters of Gilstrap Creek for irrigation either in 1887 or 1888. We think the date of June 1, 1888, would be an appropriate date for this appropriation. In view of the fact that, in order to irrigate the lands, plaintiff finds it necessary to use four ditches, we think that to give a sufficient head of water with which to irrigate successfully, 75 inches is an appropriate amount for this right.

It appears from the record that all of the ditches of defendant have their point of diversion above the points of diversion of plaintiff's four ditches; it is therefore unnecessary to give the plaintiff a separate right for each ditch. Plaintiff's appro-

priation is prior in point of time to that of defendant's as found by the trial court.

Accordingly, we remand the cause to the district court of Granite county with directions to modify its findings of fact, the conclusions of law and the judgment and decree in conformity with the views herein expressed, and direct that each of the parties to this action shall pay his or her own costs in the trial court. The plaintiff shall recover her costs on this appeal.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in this decision.