GALAHAN ET AL., APPELLANTS, *v.* LEWIS ET AL., RESPONDENTS.

(No. 7,677.)

(Submitted September 29, 1937. Decided October 26, 1937.)

[72 Pac. (2d) 1018.]

*Mr. Frank E. Blair,* for Appellants, submitted a brief, and argued the cause orally.

*Messrs. Duncan & Duncan,* for Respondents, submitted a brief; *Mr. M. M. Duncan* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an action to secure an adjudication of the water rights of the parties to the water in Leonard's slough, a natural stream in Madison county. The source of this water supply is from the drainage of swamp lands. Its flow is somewhat augmented as a result of the irrigation of near-by lands with water diverted from other streams, causing seepage water therefrom to flow into the slough.

Many of the rights adjudicated in the decree are not brought ▆ into question on this appeal. Counsel has brought up all of the testimony in the bill of exceptions with reference to these rights, thereby increasing his own labor and expense to his client, and imposing upon this court the duty of reading many pages in the transcript which are wholly unimportant on the questions which are raised on this appeal. The practice approved in *Wills* v. *Morris,* 100 Mont. 504, 50 Pac. (2d) 858, could have been followed on this appeal with profit to all concerned.

The rights involved herein are all diverted from the left fork of Leonard's slough. The court found that the plaintiff Amos A. Galahan had a right to 75 inches of water as of 1871, and 50 inches as of 1898. It made an identical finding, both as to priority and amount, in favor of the plaintiff Alfred A. Grey. All of these appropriations were made through the Smith-Richmond ditch, which was constructed through the joint efforts of the plaintiffs' predecessors in interest.

The court further found that the defendants, Lewis and Davis, were the owners of two appropriations from Leonard's slough through this same ditch—one as of 1875 for 60 inches, and another as of 1925 for an identical amount. The court also found that the defendants were the owners of a right consisting of waters which were accumulated in a drainage ditch,

but which is tributary of Leonard's slough, as of 1875 in the. amount of 60 inches. The judgment was in conformity with these findings.

Plaintiffs have appealed from this judgment. Their principal contentions, although raised by numerous specifications of error directed at the above findings, may be summarized as follows: That the findings of their rights as of 1871 should be increased in amount to 125 inches as to each plaintiff, and no rights decreed as of 1898; that the finding of 60 inches in favor of the defendants, as of 1875, through the Smith-Richmond ditch, is not supported by the evidence and, even if so supported, is excessive in amount and should be limited as to its use upon a certain small tract from four to eight acres of land in area; and that there is no evidence to support the drainage ditch right as of date of 1875. In connection with the first contention of plaintiffs it may be noted that the original findings awarded each of the plaintiffs 125 inches as of the date of 1871. Later, after exceptions were filed to these findings, they were amended to the amounts indicated supra.

In determining the amount of plaintiffs' appropriations, the guiding rule was declared by this court in the case of *Jacobs* v. *City of Harlowton,* 66 Mont. 312, 213 Pac. 244, 246, as follows: "The appropriator's need and facilities, if equal, measure the extent of his appropriation. (*Sayre* v. *Johnson,* 33 Mont. 15, 81 Pac. 389; *Bailey* v. *Tintinger,* supra [45 Mont. 154, 122 Pac. 575].) If his needs exceed the capacity of his means of diversion, then the capacity of his ditch measures the extent of the right. (*McDonald* v. *Lannen,* 19 Mont. 78, 47 Pac. 648; *Bailey* v. *Tintinger,* supra.)"

Apparently, plaintiffs in their brief rely upon evidence as to the amount of land which was susceptible to irrigation, the amount which was irrigated and the need for water on the land, as determinative of the amount of their appropriations. If the ditch used to divert these rights was insufficient in size to carry the amount of water necessary to supply their needs, then the capacity of the ditch limited the amount of their appropriations. It appears from the evidence that the course

of this ditch in part was changed in 1898. No dispute is found in the record on this point. The court found that after this time the rights of the plaintiffs were increased. We think the evidence justifies the finding, at least to the extent that thereafter the capacity of the ditch was increased.

While one witness, who participated in the construction of the original Smith-Richmond ditch, testified that it was the same size at the time of its construction as it is at the present time, the force of that testimony is entirely lost when viewed in the light of the undisputed testimony of the engineer who surveyed the original course of the ditch, to the fact that at one point the floor of the old ditch was more than 2 feet lower than it was at a point some distance ahead, over which the water would have to travel in order to reach plaintiffs' lands. This condition, testified to by the engineer, would greatly reduce the capacity of the ditch, and hence its size would be of little importance in determining that factor. The testimony of some witnesses would indicate that the capacity of this ditch, until after its reconstruction in 1898, was less than the amount decreed; but from the testimony of others it is at least inferable that the capacity was approximately in accord with the findings of the court.

It is contended on behalf of the plaintiffs that their predecessors appropriated all of the water of the slough and it should have been so decreed. But plaintiffs' rights were limited to the capacity of their ditch, their need for the water, and the amount they actually applied to a beneficial use. In this case, until after the ditch was reconstructed, the record places the limiting factor as the capacity of the ditch. When the flow of the slough was equal to or less than the amount of these appropriations, as thus determined, during such period of time they had, if used, appropriated all of the water then flowing in the slough; but, whenever the flow of the slough exceeded their appropriations, then there was water which they had not appropriated.

Many years after the use of the water through this ditch, the then present owners of these rights caused to be

recorded a notice of their water rights. These notices were not recorded so as to be within the time provided in the saving clause found in the original Recording Act of 1885 (p. 131, Laws of that year). It is argued that these notices were evidence, prima facie, of the extent of these rights. The notices did not comply with the statute as to the time of record (secs. 7102–7104, Rev. Codes). If the statute was complied with, such notices were prima facie evidence. (*Wills* v. *Morris*, 100 Mont. 514, 50 Pac. (2d) 862.) Since these notices did not comply with the statute as to the time of their recording, they are of no evidentiary value in proving the amount or date of an appropriation. (*Peck* v. *Simon*, 101 Mont. 12, 52 Pac. (2d) 164.)

Since this court will not reverse the findings of the lower court unless the evidence clearly preponderates against them, we cannot disturb these findings. (*Wills* v. *Morris*, 100 Mont. 514, 50 Pac. (2d) 862, and cases there cited.)

One of the defendants testified, over objection, to an oral agreement between his father, who was a predecessor in interest of the defendants, and the original appropriator of the rights of plaintiffs and the owners of the Smith-Richmond ditch. He said of this agreement:

"It was said that the agreement was when the ditch went through there that my father was to have an interest in that ditch and the water, a one-third interest for the right-of-way of that ditch.

"Q. Anything about keeping it up? A. Yes, he was to help keep it up.

"Q. State who you heard make such statements. A. J. B. Smith, Mr. Richmond and my father."

It is argued that this testimony was inadmissible for the reason that it was a declaration against interest and a proper foundation had not been laid for its admission, within the rule of *Osnes Livestock Co.* v. *Warren*, 103 Mont. 284, 62 Pac. (2d) 206. The testimony as given was not a declaration against interest, but an oral transfer of an interest in the ditch. This ditch passed over lands which were not owned by Smith or

Richmond. They were subsequently acquired by the father of the witness. Oral transfers of water rights in some instances are valid. (*Gilcrest* v. *Bowen,* 95 Mont. 44, 24 Pac. (2d) 141, and cases cited.) Hence this evidence might have been admissible, but whether it was or not is not of controlling importance in this case.

It is undisputed that the predecessors in interest of the defendants as well as themselves, after this agreement, assisted in the maintenance of the ditch and used the ditch at least for some purposes with the consent of the owners at such times as they did not use the water. Likewise the evidence is undisputed in the record that the plaintiffs and their predecessors did not divert water through this ditch early in the irrigation season of each year, as they obtained water from another stream, at least until that supply failed; until then they used the water from the other source.

Clearly, under any view of the evidence, defendants' predecessor was a licensee when he used this ditch, and, acting in such capacity, he could initiate an appropriation. (*Connolly* v. *Harrel,* 102 Mont. 295, 57 Pac. (2d) 781.) When plaintiffs appropriated the waters of Leonard's slough, they did not become the owners of the waters, but only of the right to use them. (*Brennan* v. *Jones,* 101 Mont. 550, 55 Pac. (2d) 697, and cases there cited.) They could not sell the water to another to be used by such purchaser when not in use by themselves. (*Brennan* v. *Jones,* supra.) Hence, when the predecessor in interest of these defendants, if only a licensee, diverted water through this ditch and used it for a beneficial purpose, he made an appropriation of the water.

At the time the diversion of water was made and when it was applied to a beneficial use, these lands were public domain, and this is true even though some of them were subsequently patented to the Northern Pacific Railway Company as part of the land grant by the United States to that corporation, which grant was made long prior to the initiation of any of these water rights. While the lands were a part of the public

domain, a settler could make a valid appropriation of water thereon. (*Barr* v. *Rupp,* 100 Mont. 612, 51 Pac. (2d) 1050.)

Subsequent to the time the predecessors of the defendants acquired title to these lands, the right of way for the ditch, a portion of which they used, passed over lands in which the owners of the ditch had an easement. Hence the defendants and their predecessors could use this ditch as the owners of the land, so long as such use was subordinate to the easement and did not restrict or limit its exercise. (*Rodda* v. *Best,* 68 Mont. 205, 217 Pac. 669.)

The plaintiffs complain that the only right ever enjoyed by the defendants was to secure a supply of water to irrigate some six to eight acres at such times as plaintiffs were not using the water, which did not amount to an appropriation of water. But, if defendants irrigated other lands by use of water through this ditch, they acquired a water right to the extent of the amount of water applied to a beneficial use. Evidence appears in the record that they did irrigate much other land over and above this six or eight acre tract. While evidence to the contrary is found in the record, it does no more than create a conflict which has been resolved in favor of the defendants by the trial court. We are unable to say, in this state of the record, that the evidence clearly preponderates against this finding. Since the use of the water under this right was far more extensive than contended by plaintiffs, the limitations upon the right in accordance with their contentions may not be imposed.

Nothing said herein, with reference to the use of this right, is to be understood as in anywise announcing a rule not in conformity with the established law of this state as to change in the use of place of an appropriation.

Plaintiffs contend that there is no evidence to support the right adjudicating further use of waters from the drainage ditch. The evidence on this right is in direct conflict. It does appear from the record that the drainage ditch was constructed on the Leonard homestead, and Leonard was a predecessor in interest of these defendants. Witnesses testified that laterals leading from this drainage ditch were in existence; that

crops and a garden were raised as a result of the irrigation of certain portions of this homestead. This evidence was sufficient, if believed by the trial court, as it was, to support the finding, and we cannot say that, on behalf of the plaintiffs, the evidence, although in direct conflict, clearly preponderates over that offered by the defendants. (*Wills* v. *Morris,* 100 Mont. 514, 50 Pac. (2d) 862.)

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

Rehearing denied November 13, 1937.