No. 13848

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

HOLMSTROM LAND COMPANY, INC., a
Montana Corporation,

> Plaintiff and Appellant,

-vs-

MEAGHER COUNTY NEWLAN CREEK WATER DISTRICT,

> Defendant, Appellant and Respondent,

and

WARD PAPER BOX CO., et al.,

> Defendants and Respondents and
> Cross-Appellants.

---

Appeal from: District Court of the Fourteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Heath and Kirwan, Bozeman, Montana
Peter M. Kirwan argued, Bozeman, Montana
Patrick F. Hooks, Townsend, Montana
Loble & Pauly, Helena, Montana
Henry Loble argued and Bruce Loble argued, Helena, Montana
John V. Potter argued, White Sulphur Springs, Montana
Small and Hatch, Helena, Montana
Floyd O. Small argued, Helena, Montana
Gary Spaeth argued, Helena, Montana
Robert T. Cummins appeared, Helena, Montana

For Respondents:

Berg, Angel, Andriolo and Morgan, Bozeman, Montana
Ben E. Berg, Jr., argued, Bozeman, Montana

---

Submitted: November 29, 1978

Decided: AUG 1 1979

Filed: AUG 1 1979

Thomas J. Kearney
_____
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

This is a multiple appeal from the findings of fact, conclusions of law and decree entered by the District Court, Meagher County, adjudicating water rights to Sheep Creek and its principle tributaries.

Sheep Creek, which is located entirely in Meagher County, originates in the Little Belt Mountains. It flows from the mountains in a westerly direction to a point where it merges with the Smith River. Sheep Creek carries large quantities of water for a relatively short period each year, usually commencing in April and extending through the latter part of June. During this heavy flow period, and at other times during the year, many farmers and ranchers divert Sheep Creek water by means of gravity flow systems and utilize the water to irrigate their farm and ranch land.

When gravity flow systems are used, the water is removed from a stream at a facility called a diversion point. The water is then transported through an irrigation ditch to the area to be irrigated. From 1935 to 1972, Holmstrom Land Company maintained the first diversion point on Sheep Creek. Holmstrom's diversion was located approximately 300 feet
(Ward)
upstream from Ward Paper Company's/ Mumbrue diversion.

In 1972 Ward built what we will refer to as the Mumbrue Bypass. This concrete structure was built above Holmstrom's diversion point and allowed Ward to divert Sheep Creek water before it reached the Holmstrom diversion. The building of the Mumbrue Bypass precipitated the present lawsuit. In October 1972, Holmstrom Land Company instituted a suit in Meagher County District Court seeking an injunction prohibiting Ward's use of the Mumbrue Bypass, and a decree establishing the rights

-2-

of all parties claiming water from Sheep Creek and its tributaries.

In addition to Ward, Holmstrom Land Company joined: Dean O. Thorson, Virginia Thorson, Porter Fender, Elmer V. Hanson, Walter Joyce, Axel M. Holmstrom, Jr., Rose Holmstrom, the Montana Resources Board of the State of Montana (Resources Board) and Meagher County Newlan Creek Water District (District). The individual defendants were joined because they all purportedly claimed vested water rights in Sheep Creek as a result of having used its water for beneficial purposes. The Resources Board and the District were joined as defendants because they claimed existing rights in Sheep Creek pursuant to filings under sections 89-121 and 89-810, R.C.M. 1947 (since repealed).

After extensive pretrial discovery and numerous motions to dismiss, the case was set for trial before the District Court, sitting without a jury. The trial was held over a six month period, but only eight days of actual litigation were involved (November 19 and 20, 1974; May 14, 15 and 16, 1975; July 29, 30 and 31, 1975).

At the conclusion of the trial all parties submitted proposed findings to the District Court. Thereafter, on February 3, 1977, the District Court entered findings of fact, conclusions of law and a decree establishing the relative rights and priorities of those parties claiming an interest in Sheep Creek and its tributaries. These findings were amended once to grant certain individuals additional water rights. Thereafter, the District Court denied all motions to further amend its findings.

On August 30, 1977, the District filed a limited notice of appeal challenging the water rights granted to Ward and Dean and Virginia Thorson. The District's notice of appeal

-3-

also indicated that the District would seek to expand the water rights granted to it by the District Court. On September 9, 1977, Ward cross-appealed and challenged the propriety of the water rights granted to the following parties: Holmstrom Land Company, Dean and Virginia Thorson, Walter Joyce, Elmer Hanson, Riverside Ranch Co., the Resources Board/the District. On September 15, 1977, Holmstrom Land Company filed a general notice of appeal and thus the entire decree is being challenged in some respect.

The three parties filing notices of appeal have raised numerous issues for our review. We group the issues raised by the parties into four subheadings: (1) the sufficiency of the decree entered by the District Court; (2) the sufficiency of the evidence to support the awards granted to Ward, Holmstrom Land Company, Thorsons, Joyce, Hanson and the Riverside Ranch; (3) the propriety of the awards granted to the District and the Resources Board; and finally, (4) the sufficiency of the evidence to support injunctive relief in favor of Holmstrom Land Company.

SUFFICIENCY OF THE DECREE

The first issue to be discussed is the sufficiency of the decree entered by the District Court. The District argues that the water decree is insufficient because it fails to specify: (1) the exact acreage to which the water rights were appurtenant; (2) the seasonal and hourly limitations which should be imposed on the various water rights; and, (3) the exact location of the various diversion points. Without this information, the District alleges the water right decree will only foster further conflicts between the parties using Sheep Creek. Holmstrom Land Company joins the District in its claim that the decree is deficient.

-4-

There is no doubt that the decree adjudicating Sheep Creek could have been more detailed. But, the question before this Court is whether the decree satisfies the statutory requirements, particularly section 89-815, R.C.M. 1947, which provides:

> "Rights settled in one action. In any action hereafter commenced for the protection of rights acquired to water under the laws of this state, the plaintiff may make any or all persons who have diverted water from the same stream or source, parties to such action, and the court may in one judgment settle the relative priorities and rights of all the parties to such action. When damages are claimed for the wrongful diversion of water in any such action, the same may be assessed and apportioned by the jury in their verdicts, and judgment thereon may be entered for or against one or more of several plaintiffs, or for or against one or more of several defendants, and may determine the ultimate rights of the parties between themselves. In any action concerning joint water rights, or joint rights in water ditches, unless partition of the same kind is asked by parties to the action, the court shall hear and determine such controversy as if the same were several as well as joint." (Emphasis added.)

The District Court's decree is sufficiently definite to "settle the relative priorities and rights of all parties." The decree designates the owners of the various water rights, their priority dates, the amount of the awards in miners inches and the source of the water. This information is sufficient to allow a water commissioner to carry out the District Court's decree.

We note that in the future, problems concerning the sufficiency of decrees should not arise because our new water laws will provide the District Court with precise guidelines for their decrees. For example, section 85-2-208 MCA (formerly section 89-877, R.C.M. 1947) provides:

-5-

"Final decree.   (1)   The court shall, on the basis of the preliminary decree and on the basis of any hearing that may have been held, enter a final decree affirming or modifying the preliminary decree.   If no request for a hearing is filed within the time allowed, the preliminary decree automatically becomes final, and the court shall enter it  as the final decree.

"(2)   The final decree shall establish the existing rights and priorities of the persons named in the petition for the source or area under consideration.

"(3)   The final decree shall state the findings of fact, along with any conclusions of law, upon which the existing rights and priorities of each person named in the decree are based.

"(4)   For each person who is found to have an existing right, the final decree shall state:

"(a)   the name and post-office address of the owner of the right;

"(b)   the amount of water, rate, and volume, included in the right;

"(c)   the date of priority of the right;

"(d)   the purpose for which the water included in the right is used;

"(e)   the place of use and a description of the land to which the right is appurtenant;

"(f)   the source of the water included in the right;

"(g)   the place and means of diversion;

"(h)   the approximate time during which the water is used each year;

"(i)   any other information necessary to fully define the nature and extent of the right.

"(5)   The final decree in each existing right determination is final and conclusive as to all existing rights in the source or area under consideration.   After the final decree there shall be no existing rights to water in the area or source under consideration except as stated in the decree."

With section 85-2-208 MCA as a guideline, district courts should have no difficulty determining what their final decrees must contain.   The present suit, however, was determined

under the old water laws and the decree entered by the District Court must be measured against water right decrees entered under those laws. We determine that it is sufficient.

SUFFICIENCY OF THE EVIDENCE TO SUPPORT VARIOUS AWARDS GRANTED TO THE INDIVIDUALS

The awards granted to Holmstrom Land Company, Ward, Dean O. and Virginia Thorson (Thorsons), Walter Joyce and Elmer Hanson have been challenged by various parties to this appeal. Though we must review the propriety of each of the challenged awards, our review of the sufficiency of the evidence is limited. See: Luppold v. Lewis (1977), _____ Mont. _____, 563 P.2d 538, 540, 34 St.Rep. 227.

We will begin our review with the water rights granted to Ward. The District Court awarded Ward 1,200 miners inches from Sheep Creek with priority dates in 1897, 1903 and 1906. This award is challenged by Holmstrom Land Company and the District. The challengers (appellants) claim Ward did not produce sufficient, competent evidence to support such a large award from Sheep Creek. We find that Ward produced sufficient evidence to support an award from Sheep Creek, but not to the extent granted by the District Court.

Section 89-810, R.C.M. 1947 (repealed in 1973) provides:

> "Notice of appropriation. Any person hereafter desiring to appropriate the waters of a river, or stream, ravine, coulee, spring, lake, or other natural source of supply concerning which there has not been an adjudication of the right to use the waters, or some part thereof, must post a notice in writing in a conspicuous place at the point of intended diversion, stating therein:
>
> "1. The quantity of water claimed, measured as hereinafter provided;
>
> "2. The purpose for which it is claimed and place of intended use;

"3. The means of diversion, with size of flume, ditch, pipe, or aqueduct, by which he intends to divert it;

"4. The date of appropriation;

"5. The name of the appropriator.

"Within twenty days after the date of appropriation the appropriator shall file with the county clerk of the county in which such appropriation is made a notice of appropriation, which, in addition to the facts required to be stated in the posted notice, as hereinbefore prescribed, shall contain the name of the stream from which the diversion is made, if such stream have a name, and if it have not, such a description of the stream as will identify it, and an accurate description of the point of diversion of such stream, with reference to some natural object or permanent monument. The notice shall be verified by the affidavit of the appropriator or some one in his behalf, which affidavit must state that the matters and facts contained in the notice are true."

The legislature has established an incentive or reward for those parties who comply with the requirements of section 89-810. Section 89-814, R.C.M. 1947 (repealed in 1973) provided:

"Record prima facie evidence. The record provided for in sections 89-810 and 89-813, when duly made, shall be taken and received in all courts of this state as prima facie evidence of the statements therein contained."

Based on this statute, a person who is claiming an existing water right is allowed to introduce a notice of appropriation which has been duly filed under/89-810, R.C.M. section 1947, and said notice "shall be taken and received in all courts of this state as prima facie evidence of the statements therein." Relying on this statute, Ward introduced three notices of appropriation which were filed by Ward's predecessors in interest. These three notices established a prima facie case for an award of 2,500 miners inches from Sheep Creek. But, this prima facie showing did not completely discharge Ward's burden of proof. Ward still had the burden of showing that all the water claimed had been put to a beneficial use over a reasonable period of time.

As we stated in Irion v. Hyde (1938), 107 Mont. 84, 95, 96, 81 P.2d 353, 358, statements made in notices of appropriation are not completely dispositive for purposes of decreeing the amount of a water right:

> "The rights of the parties were not to be measured entirely by what they claimed in their appropriation notices. They were to be measured and gauged by their beneficial use over a reasonable period of time after they initiated the appropriations. In establishing the prior right of the plaintiffs consideration must be given to the extent and manner of their use, the character of their land, and the general necessities of the case. 'To the extent of his appropriation his supply will be measured by the waters naturally flowing in the stream and its tributaries above the head of his ditch, whether those waters be furnished by the usual rains or snows, by extraordinary rain or snowfall, or by springs or seepage which directly contribute.' (Beaverhead Canal Co. v. Dillon etc. Co., 34 Mont. 135, 85 Pac. 880, 882.) It does not follow that plaintiffs were entitled to 1,000 inches because they designated that amount in their appropriation. Neither does it follow that defendants were of necessity entitled to the full amounts designated in their appropriation notices. All of these matters were subject to proof of use. (See Bailey v. Tintinger, 45 Mont. 154, 122 Pac. 575; Peck v. Simon, 101 Mont. 12, 52 Pac. (2d) 164.)"

The Irion decision requires that Ward, in addition to establishing a prima facie case through the notices, must also prove a "beneficial use over a reasonable period of time." Inherent in this burden of proof is the responsibility to prove the amount of water beneficially used. Ward proved a beneficial use and also provided the trial court with sufficient evidence to establish the amount of water beneficially applied. However, the District Court granted rights larger than Ward's evidence would support.

The evidence indicates that Ward and its predecessors have continually used Sheep Creek to irrigate Ward's property. It was established that grain crops could not be grown on Ward's land unless water was available for irrigation purposes. Ward's evidence shows that approximately 735 acres are used now, and have in the past, been used for growing crops. This

-9-

is sufficient evidence to establish a beneficial use over a reasonable period of time. See Hyde, supra. But, the District Court erred in determining the extent of Wards water rights in Sheep Creek, which were set at 1,200 miners inches.

The most favorable evidence in Ward's favor came in as Ward's exhibit no. 94. A portion of that exhibit states: "The total direct diversion requirement from Sheep Creek is equal to 21.8 + 3.6 = 25.4 C.F.S." (cubic feet per second). This 25.4 C.F.S. figure converts into 1,016 miners inches of water. See: section 89-818, R.C.M. 1947, now section 85-2-103 MCA. Accordingly, the 1,200 miners inches awarded to Ward by the District Court must be reduced by 184 miners inches.

The Ward water rights have the following priority dates: 1,000 miners inches with priority of September 10, 1897; 16 miners inches with priority date of September 29, 1903. With these modifications, the judgment in favor of Ward is affirmed.

The District Court awarded Holmstrom Land Company 3,000 miners inches from Sheep Creek with a priority date of 1935. Ward asserts that this award must be reduced for two reasons: (1) the narrowest point in Holmstrom Land Company's ditch will facilitate only 808 miners inches and therefore the 3,000 miners inches granted to Holstrom Land Company must be reduced to 808 miners inches; (2) alternatively, Ward asserts that the award to Holmstrom Land Company must be reduced from 3,000 miners inches to 1,400 miners inches because Holmstrom's diversion facility can only divert a maximum of 1,400 miners inches. Ward relies heavily on Wheat v. Cameron (1922), 64 Mont. 494, 502, 21Ø P. 761, where we stated: "[a]n appropriator cannot acquire a right to more water than his ditch will carry, and it is manifest it cannot carry a greater amount than that permitted by the headgate capacity."

-10-

The evidence supports a finding as the capacity of the ditch to carry 3,000 miners inches of water but does not support a finding that the Holmstrom Land Company diversion point is capable of diverting 3,000 miners inches of water. Therefore, it is necessary to reduce the award made to Holmstrom Land Company.

Roger Perkins, an expert called by Ward, testified as follows:

"Q. I am going to call your attention, Mr. Perkins, to Sheep Creek in the area of the by-pass, the Holmstrom diversion, and the Ward diversion. Did water going down Sheep Creek pass by the by-pass first as compared to the other installation. A. Yes.

"Q. And from there where does it go? A. It then flows under the highway. There are three culverts under the highway.

"Q. Would you also refer to the alternate place that it might flow instead of going under the highway in through the culverts? A. Yes, in times of heavier flows there is a rock masonry dam immediately adjacent to the highway where Sheep Creek can overflow and run down the borrow pit of the highway.

"Q. And if it runs over that masonry dam, it eventually could get down, would it not, to the Ward diversion in the Mumbrue ditch? A. That is correct.

"Q. Now referring to the water that goes under the dam, I mean under the highway through the culverts, the water would flow down to where first? A. It would flow to the point of the Holmstrom diversion.

"Q. And if it passes by there eventually where would it go thereafter? A. It then flows back under the highway and down to a point of the Mumbrue ditch diversion.

"Q. It flows under the highway again, is that through culverts? A. That is through culverts.

"Q. Does Holmstrom have a dam at the point of his diversion to raise the level of water and thus divert it into his ditch? A. Yes, he does.

"Q. Would you describe that dam please? A. It's just a rock dam, rock randomly placed in the stream.

"Q. Is it water-tight? A. No, it is not water-tight.

"Q. Have you made any calculations as to how much water, by use of the facility which he has there now that Mr. Holmstrom could divert into his ditch? A. Yes, I have.

"Q. Would you give us your calculations please? Do you have any documents or work papers which you use--you could use those and if they are necessary we'll introduce them. A. First of all, I took a look at the conditions associated with the maximum recorded flow in Sheep Creek, over 460 CFS. Of this 460 CFS approximately 90 CFS would flow under the highway. The remainder would go over the rock masonry dam and down the borrow pit adjacent to the highway.

"Q. That which would flow under the highway would go down to the Holmstrom diversion, that would go over the masonry dam would it not, is that correct? A. Right, this is correct.

"Q. All right. A. Now of that maximum flow of 90 CFS recorded, of the 90 CFS that could flow under the highway culverts during the maximum recorded flow of Sheep Creek, 35 CFS at a maximum could be diverted into the Holmstrom ditch. The remainder would flow over the rock dam and continue down its course in Sheep Creek.

"Q. That is because of the nature of that rock dam? A. That is because of the nature of the rock dam."

Robert Wertz, one of the principal owners of Holmstrom Land Company, was the only person to contradict Perkins' testimony. Wertz testified that in 1954 or 1956, he estimated the amount of water being diverted from Sheep Creek at the Holmstrom Land Company diversion, and it was his conclusion that the diversion point could divert at least 3,200 miners inches.

The District Court, relying on Wertz's testimony, awarded Holmstrom Land Company 3,000 miners inches from Sheep Creek. Implicit in this award is a finding that the Holmstrom diversion point is capable of diverting 3,000 miners inches.

This Courts function is to review the record to determine whether there is substantial evidence to support the District Court's findings and decree. As a general rule, we accept

all evidence in the record as true "unless that evidence is so inherently impossible or improbable as not to be entitled to belief." Strong v. Williams (1969), 154 Mont. 65, 68, 460 P.2d 90, 92. Our review of the transcript and the exhibits convinces us that it is inherently improbable that the Holmstrom Land Company diversion point is capable of diverting 3,000 miners inches of water. Accordingly, we are not bound by the District Court finding, and are entitled to review the evidence to determine the proper award to be made to Holmstrom Land Company. Strong, supra.

After an independent review of the transcript, we conclude that the District Court should have granted an award of only 1,400 miners inches (40 x 35 CFS) to Holmstrom Land Company. The evidence presented by Perkins establishes this as the upward limit of Holmstrom Land Company's water right. Accordingly, the District Court must reduce the Holmstrom Land Company award in conformity with this opinion.

We turn now to the award granted to Dean O. and Virginia Thorson. The District Court awarded the Thorsons 337 miners inches from Sheep Creek, with a priority date of September 20, 1900. The court decree specified that Thorson's water rights were "to be diverted from [the] Mumbrue Ditch."

The award to the Thorsons presents a somewhat unique question for this Court. The record indicates that Ward's predecessor in interest, D. P. Mumbrue, transferred and conveyed the right to use 337 miners inches from Sheep Creek to William Woolsey, Thorsons' predecessor in interest. This conveyance took place in 1900, and was in exchange for a right-of-way across Woolseys land. Thorson testified that neither he, nor his predecessors in interest, have ever used the full 337 miners inches for a beneficial purpose.

This Court has always recognized that a valid appropriation may be sold separate from the land to which it is appurtenant:

-13-

"We are committed to the rule that the appropria-
tor of a water right does not own the water, but
has the ownership in its use only.  (Creek v.
Bozeman Water Works Co., 15 Mont. 121, 38 Pac. 459;
Allen v. Petrick, 69 Mont. 373, 222 Pac. 451; Verwolf
v. Low Line Irr. Co., 70 Mont. 570, 227 Pac. 68;
Tucker v. Missoula Light & Ry. Co., 77 Mont. 91,
250 Pac. 11; Maclay v. Missoula Irr. Dist., 90 Mont.
344, 3 Pac. (2d) 286; Rock Creek Ditch & Flume Co.
v. Miller, 93 Mont. 248, 17 Pac. (2d) 1074, 89 A.
L. R. 200.)  Likewise it is settled by the decisions
of this court that such a right is property which may
be disposed of apart from the land on which it has
been used.  (Smith v. Denniff, 24 Mont. 20, 60 Pac.
398, 81 Am. St. Rep. 408, 50 L. R. A. 737; Lensing
v. Day & Hansen Security Co., 67 Mont. 382, 215
Pac. 999; Maclay v. Missoula Irr. Dist., supra.)"
Brennan v. Jones (1935), 101 Mont. 550, 567, 55
P.2d 697.

When D. P. Mumbrue traded a portion of his water right

to Thorsons predecessor in interest, he in effect sold 337

miners inches of his rights in Sheep Creek.   But, it does not

necessarily follow that these 337 inches are still vested in

Thorson.   Section 89-802, R.C.M. 1947, (repealed in 1973)

provided:

"Appropriation must be for a useful purpose--
abandonment.  The appropriation must be for some
useful or beneficial purpose, and when the
appropriator or his successor in interest abandons
and ceases to use the water for such purpose, the
right ceases; but questions of abandonment shall
be questions of fact, and shall be determined as
other questions of fact."  (Emphasis added.)

Review of the testimony convinces us that Dean O.

Thorson and his predecessors abandoned a large portion of the

337 miners inches conveyed to them by D. P. Mumbrue.   Thorson

testified as follows:

"Q.  How many acres of ground do you presently
irrigate from the Mumbrue ditch?  A. At present,
according to the measurement, the Soil Conserva-
tion measurement, there are 13 acres in this
tract here which we have irrigated continuously.

"Q.  The 13 acres you are referring to on the
map is that 13 acres.  A.  This is true.

"Q.  Now the other ground --  A.  There is a
7-acre tract here which we haven't irrigated
for the past three years.

"Q.  That is out of the Mumbrue ditch?  A.  Yes,
but if it wasn't for the ditch, it would irrigate
from Woolsey.

"Q.  A total of 20 acres, isn't it?  A.  Yes."

-14-

Thorson also testified that there was no evidence that his predecessors in interest had irrigated any more than twenty acres from Sheep Creek. Seventy-five years of nonuse is sufficient to provide "clear evidence" of abandonment.

This Court must therefore determine what portion of Thorson's water right remains intact. Taking the evidence in a light most favorable to Thorson, we determine that all but 80 miners inches were lost through abandonment. It was established that Thorson has used Sheep Creek water to benefit 20 acres of his land. Additional testimony established that it took up to 4 miners inches per acre to properly irrigate land which is similar to Thorsons. This evidence is sufficient to allow the granting of 80 miners inches to Thorsons with a priority date of September 20, 1900. Therefore, any award granted by the District Court in excess of 80 miners inches must be reduced to conform with the evidence produced at trial.

We turn next to the water rights granted to Walter Joyce and Riverside Ranch Co. (the successor to Elmer D. Hanson's rights). The awards to Riverside and Joyce are contained in the District Court's amended decree dated July 15, 1977. The amended decree gave Walter Joyce three water rights from Sheep Creek, totaling 1,000 miners inches, with priority dates in 1907, 1912 and 1949. The same decree awarded Riverside Ranch Co. the following water rights:

| Amount | Source | Priority Date |
|---|---|---|
| 260 inches | Little Sheep Cr. | Sept. 1888 |
| 50 inches | Coon Creek | Feb. 1903 |
| 300 inches | Sheep Creek | Sept. 1, 1897 |
| 150 inches | Sheep Creek | Jan. 16, 1903 |
| 500 inches | Sheep Creek | Nov. 19, 1892 |
| 100 inches | Sheep Creek | Sept. 3, 1935 |
| 80 inches | Horse Creek | June 10, 1928 |

Ward claims that all of the water rights granted to Riverside and Joyce must be stricken because they are not supported by the evidence. Riverside and Joyce argue that

Ward has no standing to challenge their water rights because their rights do not conflict with those granted to Ward, and alternatively, that the awards are supported by substantial evidence.

We determine that Ward has no standing to challenge the awards from Little Sheep Creek, from Coon Creek and from Horse Creek, but that it does have standing to challenge the awards from Sheep Creek. Rule 1, Mont.R.App.Civ.P. provides that "a party aggrieved may appeal from a judgment or order." To be aggrieved by an order or judgment a party must have an interest in the subject matter of the litigation which is injuriously affected by the judgment or order. Estate of Stoian (1960), 138 Mont. 384, 393, 357 P.2d 41. Although Stoian was decided before this Court adopted the new rules of civil and appellate procedure, the new rules have not changed the definition of "aggrieved." Thus, Ward must be able to show an interest in the subject matter of the litigation which has been injuriously affected by the judgment or order.

Ward has no interest in Little Sheep Creek, Coon Creek or Horse Creek; therefore, that portion of the District Court decree adjudicating those creeks cannot be challenged by Ward. On the other hand, that portion of the District Court decree which awards water rights from Sheep Creek to Riverside and Joyce is appealable by Ward. Ward, an appropriator from Sheep Creek, has an obvious interest in any water right granted from Sheep Creek. A water right which has a priority date earlier than Ward's water rights has a potentially injurious affect on Ward because the earlier appropriator could force Ward to forego his water until the earlier water right has been completely satisfied. Ward is equally interested in any award from Sheep Creek which has a priority date subsequent to Ward's priority dates, because these later rights deplete Sheep Creek and make it unlikely that Ward would ever be

-16-

able to increase his rights in Sheep Creek.  Unquestionably, Ward has an interest in this subject matter.

Getting to the merits of the water rights awarded to Riverside and Joyce, we determine that some of the awards are not supported by substantial evidence.  Certain evidence upon which the District Court relied, admitted over Ward's objections, was clearly not admissible.

The exhibits introduced by Riverside and Joyce to support their water rights were notices of appropriation filed pursuant to section 89-810, R.C.M. 1947, which provides:

> "Notice of appropriation.  Any person hereafter desiring to appropriate the waters of a river, or stream, ravine, coulee, spring, lake, or other natural source of supply concerning which there has not been an adjudication of the right to use the waters, or some part thereof, must post a notice in writing in a conspicuous place at the point of intended diversion, stating therein:
>
> "1.  The quantity of water claimed, measured as hereinafter provided;
>
> "2.  The purpose for which it is claimed and place of intended use;
>
> "3.  The means of diversion, with size of flume, ditch, pipe, or aqueduct, by which he intends to divert it;
>
> "4.  The date of appropriation;
>
> "5.  The name of the appropriator.
>
> "Within twenty days after the date of appropriation the appropriator shall file with the county clerk of the county in which such appropriation is made a notice of appropriation, which, in addition to the facts required to be stated in the posted notice, as hereinbefore prescribed, shall contain the name of the stream from which the diversion is made, if such stream have a name, and if it have not, such a description of the stream as will identify it, and an accurate description of the point of diversion of such stream, with reference to some natural object or permanent monument.  The notice shall be verified by the affidavit of the appropriator or some one in his behalf, which affidavit must state that the matters and facts contained in the notice are true.  (Emphasis added.)

If the notice provided for in section 89-810 is duly made and filed, then it "shall be taken and received in all courts of this state as prima facie evidence of the statements

therein contained." Section 89-814, R.C.M. 1947. This Court has <u>strictly</u> <u>construed</u> the provisions of section 89-814. We have held that any nonconformance with section 89-810 renders the notice of appropriation inadmissible as evidence:

> "Many years after the use of the water through this ditch, the then present owners of these rights caused to be recorded a notice of their water rights.. . . It is argued that these notices were evidence, prima facie, of the extent of these rights. The notices did not comply with the statute as to the time of record (secs. 7102-7104 Rev. Codes). If the statute was complied with, such notices were prima facie evidence. (Wills v. Mones, 100 Mont. 514, 50 P.2d 862.) <u>Since these notices did not comply with the statute as to the time of their recording, they are of no evidentiary value in proving the amount or date of an appropriation.</u> (Peck v. Simon, 101 Mont. 12, 52 P.2d 164.)" (Emphasis added.) Galahan et al. v. Lewis et al. (1937), 105 Mont. 294, 298, 299, 72 P.2d 1018.

This Court reaffirmed <u>Galahan</u> in Shammel v. Vogl (1964), 144 Mont. 354, 396 P.2d 103. Under <u>Galahan</u> and <u>Shammel</u>, a party cannot rely on defective notices of appropriation to prove the extent of his water rights or their priority dates.

In the present case, Ward properly objected to the introduction of many of Riverside's and Joyce's notices of appropriation because they were not filed within twenty days of the date of appropriation. The notice of appropriation contained in exhibit nos. 1, 3, 29, 30 and 36 was filed more than 20 days after the appropriator took water from Sheep Creek. This being so, each cannot be used as evidence to establish the amount or date of any water right. Without these notices, there is insufficient evidence to support several of the awards made to Riverside and Joyce. We find the following awards are not supported by the evidence and must be stricken:

| INADMISSIBLE EXHIBIT NO. | PARTY | AWARD | SOURCE | DATE |
|---|---|---|---|---|
| 1 | Riverside | 500 in. | Sheep Creek | Nov. 19, 1892 |
| 3 | Joyce | 300 in. | Sheep Creek | Sept. 17, 1897 |
| 29 | Riverside | 300 in. | Sheep Creek | |
| 30 | Riverside | 150 in. | Sheep Creek | Jan. 16, 1903 |
| 36 | Riverside | 100 in. | Sheep Creek | Sept. 31, 1935 |

PROPRIETY OF THE AWARDS TO THE DISTRICT AND DEPARTMENT

We turn now to the portion of the District Court decree which established that the District had an existing right to 3,000 miners inches of Sheep Creek.  The District is, and at all times relevant hereto was, a corporation incorporated pursuant to the Montana Water District Act.  The District plans to divert all available, excess water from Sheep Creek and transport it through Holmstrom's irrigation ditch to a multi-purpose reservoir in the Newlan Creek Watershed. There, the water will be stored until it can be beneficially used by the District or its customers.  It is important to note that the District has not actually diverted any water from Sheep Creek; the District is only a prospective user of Sheep Creek.  We must determine whether the District complied with the applicable statutes to establish its rights to future use of the excess water.

The District contends that its 3,000 miners inches right can be sustained under two alternative statutes.  First, that it obtained an "existing right" in Sheep Creek on or about June 29, 1973, when the Resources Board assigned its rights in Sheep Creek to the District.  The Resource Board's rights in Sheep Creek stemmed from a July 25, 1969 filing made by the Resources Board under section 89-121, R.C.M. 1947.  The District contends that the written assignment, dated June 29, 1973, was effective to transfer the Resources Board's existing rights to "all of the inappropriated water of Sheep Creek and its tributaries" to the District.

The District's alternate claim, which was permissively raised during trial, is predicated on a section 89-810 filing made by the District on July 11, 1969.  In the documents filed with the Meagher County Clerk, the District claimed an existing right to 75 cubic feet (3,000 miners inches) from Sheep Creek.

The only party challenging the award made to the District is Ward. Ward contends that the District does not have any existing rights in Sheep Creek and that the District Court's findings to the contrary must be reversed.

We shall begin by discussing the District's rights under section 89-121, R.C.M. 1947 (since repealed). Section 89-121 provided:

"Appropriation of waters--recording of notice--date of right. In acquiring the rights and administering the terms of this act herein prescribed and established, the board shall not be limited to the terms of the statutes of the state of Montana relating to water rights heretofore enacted; but, in addition thereto, may initiate a right to the waters of this state by executing a declaration in writing of the intention to store, divert or control the unappropriated waters of a particular body, stream or source, designating and describing in general terms such waters claimed, means of appropriation and location of use, and cause said notice to be filed in the office of the county clerk and recorder of the county where the major portion of the means of diversion or control will be located, which right shall vest in such board on the date of the filing of such declaration. It shall be the duty of the county clerk and recorder of each county of the state of Montana on presentation to receive, record and index such declaration, without charge, in the manner prescribed by law relating to notice of water rights.

"A certified copy of the record of said declaration shall be received as competent evidence in all courts and deemed to be prima facie proof of all matters therein recited.

"The priority of right shall date and continue from the time of such filing or recording, provided the means of actual appropriation shall be commenced by actual work of construction within four (4) years from the date of original recording. Change in means or place of diversion or control shall not affect the right of priority, if others are not thereby injured."

Ward advances three arguments to support its claim that the District did not obtain any existing rights in Sheep Creek by the June 29, 1973 assignment. First, that the "Declaration of Intention to Store, Control and Divert Water" which was filed by the Resources Board/ on July 25, 1969, was invalid because it was executed by an agent of the Resources Board rather

-20-

than by the chairman of the Resources Board. Ward claims execution of the documents by an agent was expressly prohibited by section 89-135, R.C.M. 1947. Next, Ward argues that the Resources Board had no authority to assign its existing rights in Sheep Creek. Ward argues that any assignment by the Resources Board would be an impermissible delegation of its rights and authority. Finally, Ward argues that the District and the Resources Board do not have any existing rights in Sheep Creek because they failed to commence actual work of construction on a means of diversion within four years from the date of the original section 89-121/recording R.C.M. 1947 (1969).

We find that Wards third argument is dispositive for purposes of interpreting section 89-121. Section 89-121 clearly states that "the means of actual appropriation shall be commenced by actual work of construction within four (4) years from the date of original recording." In this case, the original recording took place on July 25, 1969. There is no testimony in the record which establishes that any actual construction took place on or before July 25, 1973. Accordingly, the District cannot claim any existing rights under section 89-121, R.C.M. 1947. Any findings or conclusions inconsistent with this opinion must be stricken.

However the District also claims water rights by virtue of section 89-810 et seq., R.C.M. 1947. Ward concedes that the District properly filed its notice under section 89-810, R.C.M. 1947. The chief controversy is whether the District complied with the terms of section 89-811, R.C.M. 1947 (since repealed), which provided:

> "Diligence in appropriating. Within forty days after posting such notice, the appropriator must proceed to prosecute the excavation or construction of the work by which the water appropriated is to be diverted, and must prosecute the same with

reasonable diligence to completion. If the ditch or flume, when constructed, is inadequate to convey the amount of water claimed in the notice aforesaid, the excess claimed above the capacity of the ditch or flume shall be subject to appropriation by any other person, in accordance with the provisions of this chapter."

We interpreted section 89-811 in the recent case of the Department of Natural Resources v. Intake Water Co. (1976), 416, 171 Mont./558 P.2d 1110. In the Intake decision, we clarified the requirements and purpose of section 89-811:

"The purpose of section 89-811 is to require reasonable diligence in completing the appropriation or forfeiture of the priority of the appropriation as of the day of posting the notice of appropriation. What constitutes reasonable diligence must be determined on an ad hoc, case-by-case basis. The law in this area is summarized by a leading authority, Clark, Waters & Water Rights, Vol. 6, § 514.1, pp. 308, 309, in this language:

"What constitutes due diligence is a question of fact to be determined by the court in each case. Diligence does not require unusual or extraordinary effort, but it does require a steady application of effort-that effort that is usual, ordinary and reasonable under the circumstances.* * * So long as the applicant prosecutes the construction of works in good faith with a steady effort, he should be held to have prosecuted with diligence." Intake, 171 Mont. at 434.

"We hold therefore that the meaning of the words ' * * * proceed to prosecute the excavation or con- struction of the work by which the water appropriated is to be diverted * * *' is not confined to the commencement of actual on-site excavation or construction of the diversion works, but that it encompasses the steady on-going effort in good faith by Intake to prosecute the construction of the project under the circumstances disclosed here." Intake, 171 Mont. at 436.

In the present case the District Court held that the District had fully complied with the specifications contained in section 89-811, R.C.M. 1947:

-22-

"That within the forty days following the District's posting and recording of its said Notice of Water Right, work done by and on behalf of the District consisting of damsite investigations, engineering decisions by geologists, and project plan review and recommendations by federal agencies constituted a sufficient commencement of the construction of the work by which Sheep Creek waters were to be appropriated and diverted to comply with the requirements of Section 89-811 R.C.M., 1947. That the actions by and on behalf of the District thereafter in making surveys and geologic investigations, completing plans, entering into cooperative agreements, soil testing, core drilling, land and easement acquisition and obtaining financing and entering into a contract for the dam construction, which continued through the dates of trial of this action, constitutes prosecution of the construction of the project with reasonable diligence sufficient to comply with the provisions of Section 89-811 R.C.M., 1947.

"That a letter was written to Montana Water Resources Board dated August 11, 1969, pointing out conflict between the District's 89-811 filing and the Board's 89-121 filing, requesting the Board's release of its filing to the District.

"That the Montana Water Resources Board replied by letter dated August 15, 1969, agreeing to release the Board's filing to the District when 'the project reaches the construction stage.'

"That the District fully complied with legal requirements in posting and filing its Notice of Water Right Appropriation on July 11, 1969.

"That the District proceeded to prosecute the excavation or construction of the diversion works within forty (40) days after July 11, 1969, pursuant to Section 89-811 R.C.M., 1947."

It is, of course, this Court's duty to determine if these findings are supported by substantial evidence and in this regard the evidence must be viewed in the light most favorable to the prevailing party in the District Court. It is for the District Court to determine credibility and the weight of the testimony.

The record discloses that the following activity took place during the first forty days following the posting of the District's notice of appropriation:

-23-

"(1) The District filed a copy of their notice of appropriation with the Meagher County Clerk.

"(2) Raymond Smith, a design engineer for the Soil Conservation Service (SCS) testified that his agency was actively involved in the Newlan Creek project during the first forty days after the District posted its notice.

"(3) Frank Faranchek testified that the watershed economist completed an economic report on the overall project during the first forty days after the District's posting.

"(4) Mr. Faranchek testified that engineering reports reviewing the work done on the Newlan Creek Watershed were submitted to his office on July 11, 1969. Farancheck indicated that these reports refined some of the cost estimates and the technical data prepared for the project.

"(5) Mr. Faranchek also testified that data was collected on the recent sales prices of property around and near the Newlan Creek Reservoir. This data was collected so the District might have some working knowledge of the land prices which would be involved in future condemnation or purchase transactions.

"(6) It was also established that the District and the Montana Department of Natural Resources were corresponding during the first forty days in an effort to clarify the District's rights vis a vis the Department's."

We agree that the evidence produced by the District is less convincing than the evidence before this Court in the Intake case. But Intake also establishes that "what constitutes reasonable diligence must be determined on an ad hoc, case-by-case basis." Intake at 434.

We determine that the evidence is sufficient to support the District Court's finding that the District had proceeded to prosecute the excavation or construction of the work within the first forty days of posting its notice of appropriation. Therefore, the 3,000 miners inch existing right was properly awarded to the District and is hereby affirmed.

We will now consider the "uncertain" right granted to the Resources Board. At the outset we would note that the Resources

-24-

Board, like the District, can only claim an "existing right" to Sheep Creek. An existing right is defined as: "a right to the use of water which would be protected under the law as it existed prior to July 1, 1973." Section 89-867(1), R.C.M. 1947, now section 85-2-102(7) MCA. Section 36-2.14J(1)-S1400 M.A.C., further provides: "(e) 'Existing right', in addition to the definition given the term by section 89-867(4) of the Act, includes any appropriation of water commenced prior to July 1, 1973, if completed according to the law as it existed when the appropriation was begun."

Since the Resources Board filed its notice of appropriation on June 23, 1973, an existing right in Sheep Creek was acquired on that date. However, under the law their right would expire unless "the means of actual appropriation . . . [was] commenced by actual work of construction within four (4) years from the date of original recording." Section 89-121, R.C.M. 1947.

When the District Court entered its findings (February 3, 1977), the Resources Board had until June 23, 1977 to begin work to comply with the statute. Accordingly, the District Court was correct in awarding the Resources Board an uncertain right in Sheep Creek. Events subsequent to the District Courts findings must be used to determine whether the Resources Board's existing right has become vested or has expired. All we decide today is that the District Court did not err in awarding the Resources Board an uncertain right on February 3, 1977.

SUFFICIENCY OF THE EVIDENCE TO SUPPORT INJUNCTIVE RELIEF

The final major issue is the District Court's refusal to enjoin Ward's use of the Mumbrue Bypass. As previously stated, the Mumbrue Bypass was built by Ward in 1972; the bypass allows Ward to divert Sheep Creek water before it passes Holmstrom's diversion point. The original complaint

filed by Holmstrom alleged that the Mumbrue Bypass injured Holmstrom because it lowers the water level at Holmstrom's diversion point, and thereby renders it less usable. Holmstrom's complaint asked the District Court to permanently enjoin Ward's use of the Mumbrue Bypass. Holmstrom now claims that the District Court erred when it refused to enjoin Wards use of the Mumbrue Bypass.

This issue is controlled by section 89-803, R.C.M. 1947 (not recodified) which provided:

> "Point of diversion may be changed--change of use. The person entitled to the use of water may change the place of diversion, if others are not thereby injured, and may extend the ditch, flume, pipe, or aqueduct, by which the diversion is made, to any place other than where the first use was made, and may use the water for other purposes than that for which it was originally appropriated."

This Court long ago established that the burden is on the party claiming to be injured to plead and prove that the change in location will adversely affect him:

> "While, of course, one may not change the point of diversion any more than the place of use or the character of use, to the prejudice of other appropriators (Rev. Codes, sec. 4842), it does not follow that any such change is to be taken, in limine, as prejudicial. On the contrary, the burden is on the party claiming to be prejudiced by such change, to allege and prove the facts. (Hansen v. Larsen, 44 Mont. 350, 120 Pac. 229.)" Lokawich v. City of Helena (1912), 46 Mont. 575, 577, 129 P. 1063.

Although Holmstrom Land Company properly raised the diversion issue in its original complaint, Holmstrom failed to prove injury during the course of the trial. At most, Holmstrom's testimony indicated that their "rock diversion" might need to be revamped if the bypass was used; however, this testimony does not show injury sufficient to warrant injunctive relief. Accordingly, the District Court did not err when it refused to enjoin the use of the Mumbrue Bypass.

The briefs of the parties have brought a number of additional, minor issues to our attention. We have reviewed these issues and find them to be without merit.

The judgment of the District Court must be modified to conform to this opinion. As so modified, the judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 13848

HOLMSTROM LAND CO., INC.,
a Montana corporation,

Plaintiff, Respondent and
Cross-Appellant,

vs.

MEAGHER COUNTY NEWLAN
CREEK WATER DISTRICT,

Defendant and Appellant,

and

WARD PAPER BOX CO., et al.,

Defendants, Respondents and
Cross-Appellants.

FILED

FEB 21 1980

Thomas J. Kearney

CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER ON PETITION FOR REHEARING

In the petitions for rehearing, we are reminded that even though there has been no compliance with the statutes regulating appropriations by record, where water has actually been diverted from streams and applied for beneficial use, a right to the use of that water for beneficial use is established. In discussing the effect of recording statutes in water appropriation matters, this Court said in Murray v. Tingley (1897), 20 Mont. 260, 268, 269:

> "Questions of priority, however, as well as of the original capacity, etc., of ditches, depended chiefly on oral testimony,--on the memory of eyewitnesses, often at fault through lapse of time. Confusion and insecurity to vested rights resulted. To obviate this as much as possible, the statute was enacted. It required a notice of location to be posted at the point of diversion, to apprise others who contemplated the acquisition of water rights from the same stream that the locator had taken his initial step to appropriate water. It required a recorded notice of appropriation, in order that a record might be supplied, giving the history in detail of each appropriation, which would inure to the benefit of their successors in

-1-

interest, as well as to the appropriator's, and not leave them dependent upon the mere memory of witnesses when conflicts should arise. In enacting this law the legislature did not contemplate that one who failed to comply with the terms of the statute, but who, in the absence of any conflicting adverse right, had nevertheless actually diverted water and put it to a beneficial use, should acquire no title thereby. The essence of an appropriation--a completed ditch, actually diverting water, and putting it to a beneficial use--remained the same as it had been before. The object of the statute was to preserve evidence of rights, and also to regulate the doctrine of relation back. It follows that the statute controls this doctrine of relation back, and that one who seeks to avail himself of it since the passage of this act can only do so by a compliance with the statutory requirements.

"Again, we are satisfied that the legislature did not intend that one who failed to comply with the statute, but who had nevertheless actually diverted water, could be deprived of it by another who complies with the statute at a time subsequent to the former's completed diversion. (Citing cases.)"

As to Elmer Hanson (Riverside Ranch), and Walter Joyce, although their written and posted notices are deficient, and therefore not admissible in evidence to establish the dates thereby of their beneficial rights in the waters in Sheep Creek, the evidence is uncontroverted that each of these parties did actually divert from Sheep Creek, and use beneficially upon their lands those waters. Their lands are downstream from the other claimants, and their rights would be junior to any of the other claimants, so therefore, there are no adverse interests claiming this same water now being beneficially used by Riverside Ranch and by Joyce. The evidence is further clear that since 1949, the appropriation of waters for these purposes by Hanson (Riverside Ranch) and Joyce has been ongoing. Therefore, even though their evidence of earlier diversion through the recorded notices is not admissible, under the other evidence in this case, they have established a beneficial use of waters from Sheep Creek at least since 1949. In the case of Riverside Ranch, this amounts to 1,050 inches and in the case of Walter Joyce, an additional 200 inches out of Sheep Creek.

Our original opinion therefore, of August 2, 1979 in this case is modified to allow out of Sheep Creek 1,050 inches to Riverside Ranch and an additional 200 miners inches out of Sheep Creek to Walter Joyce, each beginning June 1, 1949 which date is probably the latest first date for the irrigating season for that year. As so modified, our opinion of August 2, 1979 is otherwise confirmed, and the petitions for rehearing are otherwise denied.

DATED this 21st day of February, 1980.

_____
Chief Justice

_____

_____

_____
Justices

-3-